FILED

2010 Mar-29  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DARON OWENS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:08-CV-01959-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The plaintiff, Daron Owens, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Owens timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Owens was forty-eight years old at the time of the Administrative Law Judge's ("ALJ") decision[1], and he has a high school education, having obtained his GED.    (Tr. at 621.)   His past work experiences include employment as a brazer, fork lift operator, cashier, and mixer operator. (Tr. at 620.)  Owens claims that he became disabled on March 30, 2002, due to a pinched nerve in his neck; inability to be around people; difficulty lifting, standing, or sitting for any length of time; and suicidal tendencies. (Doc. 8 at 2.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments

---

[1]A previous decision was issued by a different ALJ on January 26, 2004.  (Tr. at 23-28.)  Plaintiff appealed that decision, and another judge from this Court remanded the case on December 19, 2005, for further consideration of the evidence.

combined.    20  C.F.R.  §§  404.1520(a)(4)(ii),  416.920(a)(4)(ii).    These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.   *Id*.   If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the

evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

If substance abuse is found to be a "contributing factor material to the determination of disability," then the claimant is not considered disabled. 42 U.S.C. § 423(d)(2)(C). In order to find that substance abuse is "material to the determination," it is key to ascertain whether the claimant would still be considered disabled absent the drug addiction or alcoholism. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If the claimant is not found to be disabled absent the substance abuse, then there is no disability; if the claimant would be disabled without the substance abuse, then the alcoholism or drug abuse is not material to the decision. 20 C.F.R. §§ 404.1535(b)(2)(i-ii), 416.935(b)(2)(i-ii).

Applying the sequential evaluation process, the ALJ found that Owens meets the nondisability requirements for a period of disability and DIB and

was insured through June 30, 2005.   (Tr. at 610, 612.)   He further determined that Owens has not engaged in substantial gainful activity since the alleged onset of his disability.  (*Id*. at 612.)   According to the ALJ, Plaintiff's degenerative disc disease of the lumbar and cervical spine; chronic pulmonary disease ("COPD"), polysubstance abuse; chronic renal calculi; gastroesophageal reflux disease ("GERD"); depressive disorder; generalized anxiety disorder; personality disorder; borderline intellectual functioning; positive rheumatoid arthritis ("RA") test; and possible early Parkinson's disease are considered "severe" based on the requirements set forth in the regulations.  (*Id*.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (*Id*. at 613.)  The ALJ did not find Owens's allegations to be totally credible, and he determined that Owens has the residual functional capacity to "sustain an 8-hour workday with moderate or less pain with the following restrictions . . . : lift and carry 10 pounds frequently and 20 pounds occasionally, continuous standing or walking limited to 30 minutes at a time, unlimited sitting, only occasional bending, and no excessive dust/fumes/chemicals in the workplace." (*Id*.)  The ALJ

also concluded that Owens's "ability to respond to the mental demands of work is fair or better, meaning moderate or less restriction, in the following areas: understanding and memory, concentration/persistence/pace, social interaction, and ability to tolerate work stress." (*Id.*)

Using the testimony of a vocational expert, the ALJ determined that Owens would not be able to perform his past relevant work, but considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Owens can perform. (Tr. at 621.) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from March 30, 2002[,] through the date of this decision." (*Id*. at 622.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "[d]espite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards

is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.

1984).

III.    Discussion.

Owens argues that the ALJ improperly discounted the opinion of

consulting physician Dr. Marlin Gill and gave too much weight to the

assessment of a prison nurse in determining his RFC.  (Doc. 8 at 8-12.)

Owens also contends the ALJ failed to properly define Plaintiff's mental RFC

and erred in his consideration of the opinions of neuropsychiatrist Dr. John

Goff, and consulting psychologist Dr. John Haney.  (*Id.* at 12-13.)

A.    Dr. Gill.

After one examination, consulting physician Dr. Gill determined that

Plaintiff could not: "do things that require repetitive neck movement or any

significant lifting with his right arm or repetitive pushing, pulling, etc.  Also,

. . . [Plaintiff could not] do repetitive bending, stooping, squatting, lifting,

etc. or prolonged standing and walking."  (Tr. at 154.)  Dr. Gill opined that

Owens's most serious impairment was his depression, and concluded that

Plaintiff was not "capable of engaging in a normal work environment."  (*Id.*)

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  One-time examiners are not entitled to the deference of treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

Moreover, opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Such statements by a physician are relevant to the ALJ's findings,

but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).  The ability to reconcile differences in the medical record and the opinions of the medical evaluators resides with the Commissioner.

The ALJ gave little weight to Dr. Gill's opinion because the doctor examined Owens only once, did not have a known expertise in mental health care, and his opinion was inconsistent with his examination.  (Tr. at 615.) Although Plaintiff complained to Dr. Gill of reduced motion and pain with motion, Dr. Gill noted that he was not in acute distress, had a normal gait, used his right hand normally, moved the joints in his right arm with full range of motion, had a left arm that looked normal, had muscle strength of 4-5/5 in both arms, and his neck and back appeared normal.  (Tr. at 153.) Moreover, while Owens refused to flex his hips more than forty-five degree because of back pain, he was able to perform a full squat and arise.  (*Id*.) Regarding Owens's complaints of pain, Dr. Gill was only able to conclude that Plaintiff "*may* have some impairment related to this."  (Tr. at 154 (emphasis added).)  The Court cannot find error in the ALJ giving little weight to the opinion of a one-time examiner that is supported only by

Plaintiff's subjective complaints[2] and is inconsistent with the doctor's own examination.

B.    Prison Nurse.

Plaintiff also challenges the ALJ's use of a prison nurse's assessment in determining his RFC.  Owens contends that the noted restrictions were not listed as work restrictions, and a treating relationship with the nurse cannot be established because different signatures appear next to different notes throughout the prison records.  (Doc. 8 at 8-10.)

The ALJ stated in his decision that he gave "great weight to the opinion of Dr. Bosserman, the staff physician at the prison, and of the nurse practitioner there that indicates limitations only on lifting over 20 pounds and standing and walking continuously for only 30 minutes at a time."  (Tr. at 620.)   The ALJ reasoned that "[t]hose opinions were based on examinations and observations over several months and are consistent with little if any significant abnormality on examinations."  (*Id*.)  While a nurse practitioner is not an "acceptable medical source," *see* 20 C.F.R. §§

───────────────

[2]The record contains numerous instances of malingering and exaggeration by the plaintiff regarding his medical condition.

404.1513(a), 416.913(a), nurses are "other sources" from whom the Commissioner may use evidence to determine the severity of an impairment and the effect of an impairment on a plaintiff's ability to work, 20 C.F.R. §§ 404.1513(d), 416.913(d).

Plaintiff does not dispute that Dr. Bosserman was a treating physician at the prison, or that Dr. Bosserman noted the functional limitations of "no standing/walking greater than 30 minutes" and "no lifting greater than 20 lbs" on July 20, 2005.  (Tr. 754.)  Dr. Bosserman's notes are made on a form that addresses possible housing assignments, medical isolation, and work restrictions.  (*Id*.)  And, it is undisputed that on the same day he made those notes, Dr. Bosserman cancelled Owens's work stop.  (*Id*. at 782.)  Nurse S. Poursaied repeated the same restrictions on the same form in December 2005 (*id*. at 738) and June 2006 (*id*. at 898).  In fact, on the last form, the nurse lists the limitations on the line labeled "work restrictions."  (*Id*.)  An RFC is an assessment based on "all of the relevant evidence[] of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Because Nurse Poursaied was an "other source" whose opinions were consistent with that rendered by one

of Plaintiff's treating physicians, the ALJ did not err in considering her notes to determine the severity of Plaintiff's already-established impairments and giving those notes substantial weight.

C.    Mental RFC.

Owens attacks the ALJ's finding that the functional limitations of his psychological impairments were "fair or better."  He argues that the terms are "nebulous," but concedes the ALJ defined "fair or better" as "moderate or less" restriction in "understanding and memory, concentration/persistence/pace, social interaction, and ability to tolerate work stress."  (Doc. 8 at 12; Tr. at 613.)  The ALJ's definition is sufficiently clear.

Owens also contends that the ALJ erred in his consideration of the opinions of neuropsychiatrist Dr. John Goff, and consulting psychologist Dr. John Haney.  (Doc. 8 at 12-13.)  Dr. Goff testified as a medical expert at the first hearing before an ALJ.  Dr. Goff concluded that Plaintiff's primary diagnosis was a personality disorder, most likely borderline personality disorder, and Owens would have a moderate impairment in social functioning.  (Tr. at 600-01.)  Dr. Goff also testified that he did not believe

the personality disorder had any direct impact on the activities of daily living.  (*Id*. at 601.)  Dr. Goff's testimony supports the ALJ's findings, but the ALJ gave his opinion little weight because Dr. Goff "neither examined nor treated the claimant and did not have all of the treatment records." (*Id*. at 620.)  The ALJ also discounted the opinion of the state agency medical consultant, who concluded Owens had no more than mild mental limitations, for the same reasons.  (*Id*.)  The Court finds no error in these decisions.

The ALJ gave great weight to the June 2002 opinion of Dr. Haney, a consulting psychologist, who concluded Plaintiff was moderately impaired in his ability to function in most jobs.  (*Id*.)  Plaintiff argues that Dr. Haney's functional assessment conflicts with his diagnosis of "moderate to severe" major depression.  (Doc. 8 at 13.)  The Court disagrees.  It is not inconsistent for a "severe" impairment to only have a "moderate" functional impact.  Moreover, it is the ALJ's responsibility to determine a claimant's residual functional capacity.  ALJs routinely determine that impairments are "severe," but do not prevent a claimant from performing work because their functional impact is not "severe."  *See, e.g., Dowdy v.*

*Barnhart*, 2005 WL 3841868 (M.D. Ala. 2005) ("[I]mpairments considered 'severe' for the purpose of step two of the sequential evaluation do not necessarily 'impose significant work-related limitations' for the purpose of subsequent steps in the sequential evaluation.")  It should also be noted that Dr. Haney's conclusion that Plaintiff had only moderate functional limitations is consistent with the September 2004 assessment of Dr. Edward Love, Plaintiff's treating psychiatrist.  In short, there is ample evidence in the record to support the ALJ's RFC findings.

IV.   Conclusion.

After full review of the administrative record and for the reasons outlined above, the Court finds that the Commissioner's decision is supported by substantial evidence and in accord with applicable law.  A separate order will be entered.

Done this 29th day of March 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297